# Illinois Official Reports

## Appellate Court

---

### *U.S. Bank National Ass'n v. Rose*, 2014 IL App (3d) 130356

---

| | |
|---|---|
| Appellate Court Caption | U.S. BANK NATIONAL ASSOCIATION, a National Banking Association, as Successor-in-Interest to the Federal Deposit Insurance Corporation in its Capacity as Receiver for Park National Bank, Plaintiff-Appellant, v. MICHAEL H. ROSE; MHR ESTATE PLAN LLC, a Delaware Limited Liability Company; PLAINFIELD RETAIL LAND LLC, an Illinois Limited Liability Company; UNKNOWN OWNERS; and NONRECORD CLAIMANTS, Defendants-Appellees. |
| District & No. | Third District<br>Docket No. 3-13-0356 |
| Filed | February 5, 2014 |
| Held<br><br>(*Note: This syllabus constitutes no part of the opinion of the court but has been prepared by the Reporter of Decisions for the convenience of the reader.*) | In an attachment action, the trial court has no discretion and "shall" enter an order for attachment if the factual findings establish both cause and a probability of success, and where plaintiff bank established all of the requisite elements of fraud, including that defendant transferred assets to an offshore account, defendant made misrepresentations and false statements about his dealings, and there was a probability that plaintiff would succeed on its claims for foreclosure, monetary and injunctive relief under the Uniform Fraudulent Transfer Act, and a monetary judgment on defendant's guaranty of another loan, the trial court's denial of plaintiff's motion for prejudgment attachment of defendant's assets was reversed and the cause was remanded for further proceedings. |
| Decision Under Review | Appeal from the Circuit Court of Will County, No. 13-CH-212; the Hon. Richard J. Siegel, Judge, presiding. |

| Judgment | Reversed and remanded with instructions. |
| --- | --- |

| Counsel on Appeal | William J. Dorsey, BeLinda I. Mathie, and Paul T. Musser, all of Katten, Muchin, Rosenman LLP, of Chicago, for appellant. |
| | |
| | Michael A. Weinberg, John B. Haarlow, Jr., and Alexander L. Berg, all of Novack & Macey LLP, of Chicago, and Stephen D. White, of Rathbun, Cservenyak & Kozol, LLC, of Joliet, for appellees. |

| Panel | JUSTICE O'BRIEN delivered the judgment of the court, with opinion.<br>Justices Carter and Holdridge concurred in the judgment and opinion. |
| --- | --- |

**OPINION**

¶ 1    This appeal arises out of a foreclosure and fraud action filed by plaintiff, U.S. Bank National Association (US Bank), against defendants, Michael H. Rose (Rose) and MHR Estate Plan LLC (MHR Estate Plan). After filing its complaint in the foreclosure case, plaintiff filed a motion for prejudgment attachment against defendants' assets. The trial court denied the motion. Plaintiff appeals. We reverse and remand for further proceedings.

¶ 2                                          FACTS

¶ 3    On January 15, 2013, plaintiff filed a complaint naming Rose and MHR Estate Plan as defendants. The complaint sought (1) to foreclose a mortgage based on Rose's breach of the related note; (2) a monetary judgment, attachment, and injunction against MHR Estate Plan because Rose had fraudulently transferred property to MHR Estate Plan in an effort to hide assets; and (3) a judgment on Rose's guarantee of a separate loan. The monetary claims sought more than $13 million in relief.

¶ 4    Shortly after filing the complaint, US Bank filed a motion for prejudgment attachment under the attachment article of the Code of Civil Procedure (hereinafter, Attachment Act) (735 ILCS 5/4-101 *et seq.* (West 2012)) against all assets of Rose and MHR Estate Plan. The motion argued that attachment was justified by four "causes" under the Attachment Act: (1) Rose was not a resident of Illinois; (2) Rose had concealed himself from service of process of the underlying complaint; (3) Rose and MHR Estate Plan were about to fraudulently conceal, assign, or otherwise dispose of property as to hinder US Bank as a creditor; and (4) Rose had

fraudulently contracted for the underlying debt. See 735 ILCS 5/4-101(1), (2), (8), (9) (West 2010).

¶ 5 The pleadings established the following facts relevant to our decision. On September 18, 2002, US Bank's predecessor-in-interest and Rose executed a $500,000 loan (Loan). The associated promissory note (Note) included a negative covenant (Antiassignment Covenant), under which Rose agreed not to "sell, transfer, mortgage, assign, pledge, lease, grant a security interest in, or encumber any of Borrower's assets" without the prior written consent of US Bank.

¶ 6 US Bank claims that by 2009, Rose was facing potential liability to US Bank of $37 million on various defaulted obligations. On February 2, 2009, Rose formed MHR Estate Plan. MHR Estate Plan is a limited liability company initially funded by Rose with $120,000 cash. Rose then gifted his interest in MHR Estate Plan to a trust established in the Cook Islands, and MHR Estate Plan became the sole member of the trust. However, Rose remains a creditor of MHR Estate Plan by virtue of promissory notes executed by MHR Estate Plan in favor of Rose. The trust explicitly excludes any trust funds from being used to satisfy claims of creditors or judgments of a court of law outside the Cook Islands. The beneficiaries of the trust are Rose's wife and children. Rose is the "Advisor" of the trust but claims not to retain any control over it. Rose's sister-in-law is the manager of MHR Estate Plan and controls its daily operations. Rose asserts that the sister-in-law has 30 years' experience in the financial sector and is not a mere figurehead controlling the entity to further Rose's interests.

¶ 7 On October 12, 2009, Rose assigned his interests in a mobile home park (K&G Interest) and his interests in two limited liability companies (Gateway Interests) (together, Rose Interests) to MHR Estate Plan. US Bank estimates that the Rose Interests are worth at least $6,850,000. Rose claims they are worth slightly less than $2 million. In exchange for the Rose Interests, Rose received two 15-year, interest-only notes with a face value of $2 million. Rose did not report this transfer to US Bank, in violation of the Antiassignment Covenant.

¶ 8 On April 1, 2010, Rose and US Bank executed a modification of the September 18, 2002, loan (Loan Modification). The Loan Modification amended the principal of the note to $529,500 and extended the maturity date to September 1, 2012. As part of the Loan Modification, Rose averred that he had at no time breached the Antiassignment Covenant.

¶ 9 After Rose defaulted on other obligations to US Bank, and US Bank learned of the transfer of the Rose Interests, US Bank filed the underlying complaint and attempted to serve Rose. After attempting service to no avail at Rose's Illinois home, Florida home, and Illinois business address, US Bank moved for special service, arguing that Rose was intentionally avoiding service. After the court granted the motion, US Bank effected service on Rose.

¶ 10 US Bank moved for prejudgment attachment. After a hearing, the trial court denied the attachment motion, finding that US Bank failed to establish any element of cause by a preponderance of the evidence. The court ordered its decision appealable under Illinois Supreme Court Rule 304(a) (eff. Feb. 26, 2010), finding no just reason for delay. Plaintiff appeals, arguing the court erred in denying the attachment motion.

¶ 11 ANALYSIS

¶ 12    On appeal, plaintiff argues that its motion for prejudgment attachment should have been granted against Rose's assets, including any Rose assets that are part of MHR Estate Plan.

¶ 13    To qualify for an order for prejudgment attachment, a plaintiff must establish (1) by a preponderance of the evidence at least one of the nine varieties of "cause" listed in section 4-101 (735 ILCS 5/4-101 (West 2012)); and (2) a "probability" of success on the merits (735 ILCS 5/4-137 (West 2012); *Amcore Bank, N.A., Rock River Valley v. Hahnaman-Albrecht, Inc.*, 305 Ill. App. 3d 63 (1999)). The Attachment Act "shall be construed in all courts in the most liberal manner for the detection of fraud." 735 ILCS 5/4-102 (West 2012).

¶ 14                                    A. Standard of Review

¶ 15    We, like the parties, find no Illinois case establishing the standard of review for a court's decision to grant or deny a motion for prejudgment attachment. US Bank urges us to apply *de novo* review, while Rose argues for abuse of discretion. Although prejudgment attachment would appear to be the kind of decision over which we typically grant the court broad discretion, we find that the Attachment Act mandates appellate review that does not fit so neatly into established standards.

¶ 16    Section 4-101 of the Attachment Act states that a plaintiff "*may* have an attachment" (emphasis added) if he establishes cause, implying that the trial court retains discretion over the decision to grant attachment. 735 ILCS 5/4-101 (West 2012). However, section 4-104 adds that "the court, if it is satisfied that the affidavit has established a prima facie case, *shall* enter an order for attachment" (emphasis added), which limits the court's discretion over the ultimate decision whether to grant attachment. 735 ILCS 5/4-104 (West 2012). Reading these statements together, we determine that the trial court is entitled to limited discretion in its decision whether to grant attachment. The court's factual findings of cause and a likelihood of success on the merits will be reviewed for manifest error. See *People v. Coleman*, 183 Ill. 2d 366 (1998). If the factual findings establish both cause and a probability of success, the court retains no discretion to deny attachment–the court "shall" enter the order. 735 ILCS 5/4-104 (West 2012).

¶ 17                                    B. Cause

¶ 18    We find that plaintiff established, by a preponderance of the evidence, cause under subsection 4-101(9) of the Attachment Act. Subsection 4-101(9) applies where "the debt sued for was fraudulently contracted on the part of the debtor." 735 ILCS 5/4-101(9) (West 2012). Rose engaged in fraudulent contracting when he averred in the Loan Modification that he had not breached any covenants, when in fact he had breached the Antiassignment Covenant.

¶ 19    Actual fraud is necessary to establish cause under subsection 4-101(9). *Brady v. Marshall*, 302 Ill. App. 151 (1939). A claim of actual fraud requires five elements: (1) a false statement of material fact; (2) by one who knows or believes it to be false; (3) made with the intent to induce action by another in reliance on the statement; (4) action by the other in reliance on the truthfulness of the statement; and (5) injury to the other resulting from that reliance. *Siegel Development, LLC v. Peak Construction LLC*, 2013 IL App (1st) 111973.

¶ 20    US Bank has established all five elements of fraud. First, Rose made a false statement of fact when he represented in the Loan Modification that he had not breached the Antiassignment Covenant. Not only did Rose not inform US Bank that he had formed a trust in the Cook Islands, he actively concealed the fact that he had transferred significant interests to the trust, in blatant violation of the Antiassignment Covenant. The statement was material to the Loan Modification because the Rose Interests were valued at somewhere between $2 million and $6,850,000. We cannot conclude that the transfer of millions of dollars in assets to an offshore account in the Cook Islands would have been immaterial to US Bank's decision to extend the Loan.

¶ 21    Second, Rose knew the statement was false because he personally entered into the Antiassignment Covenant and transferred the Rose Interests. Rose's argument that the omission was a mere oversight is unconvincing, as Rose was a seasoned businessperson. Third, Rose made the misrepresentation with the intent to induce US Bank to enter into the Loan Modification. Fourth, US Bank entered into the Loan Modification relying, in part, on Rose's false statement. Finally, US Bank suffered injury because, by transferring the Rose Interests, Rose was less likely able to pay a potential judgment if he defaulted on the Loan. In conclusion, Rose fraudulently contracted for the Loan when he misrepresented his compliance with the Antiassignment Covenant. US Bank has shown cause by a preponderance of the evidence under section 4-101(9) of the Attachment Act. The trial court's decision to the contrary was against the manifest weight of the evidence.

¶ 22                                    C. Probability of Success

¶ 23    US Bank has established a "probability" of success on the merits of the three claims brought in the underlying complaint. 735 ILCS 5/4-137 (West 2012). Rose claims that US Bank has forfeited its claim because it did not address probability of success in its appellant's brief. See Ill. S. Ct. R. 341(h)(7) (eff. Feb. 6, 2013).

¶ 24    The rule of waiver is an admonition of the parties and not a limitation on the jurisdiction of the court. *In re Estate of Funk*, 221 Ill. 2d 30, 96-97 (2006). We may look beyond waiver when the interests of justice so require. *Funk*, 221 Ill. 2d at 97. We choose to do so in the present case. US Bank addressed likelihood of success in the trial court. The trial court did not reach the issue of success on the merits because it decided the motion based upon US Bank's failure to establish cause. As a result, US Bank may have been attempting to appeal only the cause aspect of the trial court's decision. Because of the time-sensitive nature of a prejudgment attachment motion, we choose to decide the likelihood of success element in the interest of efficiency, rather than remanding to the trial court for further fact-finding. The record on appeal provides us with sufficient facts to decide this issue.

¶ 25    We find a probability that US Bank will succeed on the merits of the three claims raised in its complaint. US Bank's first claim seeks to foreclose on the mortgage associated with the Loan, as a result of Rose's default. US Bank has attached documentation establishing that Rose is in default on the Note. Without evidence of an affirmative defense on the part of Rose, US Bank has established a probability of success on its first claim.

¶ 26    US Bank's second claim seeks monetary and injunctive relief under the Uniform Fraudulent Transfer Act (740 ILCS 160/5(a)(1), (2), 6(a) (West 2008)), claiming that Rose fraudulently transferred the Rose Interests to MHR Estate Plan. Under section 5(a)(1) of the Uniform Fraudulent Transfer Act, US Bank must establish that Rose transferred the Rose Interests "with actual intent to hinder, delay, or defraud" US Bank. 740 ILCS 160/5(a)(1) (West 2008). Based on the facts pled by US Bank concerning Rose's creation of and transfers to MHR Estate Plan, we find a probability that US Bank will succeed on this claim.

¶ 27    US Bank's third claim seeks a monetary judgment on Rose's guaranty of a separate loan. US Bank claims that the note associated with the loan has matured and that Rose, as guarantor, is liable for the outstanding balance. US Bank attached: (1) the loan's note establishing its maturity date as September 1, 2012; and (2) the guarantee establishing Rose's liability on the note. Those documents are sufficient to establish a probability that US Bank will succeed on its claim.

¶ 28    US Bank has therefore established both requirements for prejudgment attachment (735 ILCS 5/4-101, 4-139 (West 2012)), and the trial court erred in denying US Bank's motion. The trial court did not explain its reasoning in finding that US Bank had failed to establish cause by a preponderance of the evidence.

¶ 29    US Bank's motion for attachment should be granted against Rose's assets. US Bank may attach assets of Rose that are present in Will County up to the amount US Bank swears is due. 735 ILCS 5/4-110 (West 2012) ("Such order [of attachment] shall order the officer to attach so much of the estate, real or personal, of the defendant, to be found in the county, as shall be of value sufficient to satisfy the debt and costs, according to the affidavit ***.") In addition, the trial court shall fix bond as set forth in sections 4-107 and 4-108 of the Attachment Act (735 ILCS 5/4-107, 4-108 (West 2012)).

¶ 30                                    CONCLUSION

¶ 31    The judgment of the circuit court of Will County is reversed, and the cause is remanded with instructions.

¶ 32    Reversed and remanded with instructions.